Case number 23-1052. Evergreen Shipping Agency, America Corp. and Evergreen Lawn Joint Service Agreement Petitioners v. Federal Maritime Commission and United States of America. Mr. McGovern for the petitioners, Mr. Huey for the respondents. Good morning, Your Honors. May it please the Court, Robert McGovern on behalf of the Evergreen Ocean Carrier Petition. In the challenge decision, the Federal Maritime Commission found that Ocean Carrier Evergreen was unreasonable when it charged Motor Carrier TCW a detention charge for returning its shipping container late, including over a scheduled and widely publicized holiday weekend when TCW knew months in advance that the Port of Savannah was going to be closed. The Commission found these charges to be unreasonable because, in its view, there could never be any financial incentive to return equipment on a particular day if there is no ability to return the equipment on that particular day. The Commission says that its decision should be upheld by this Court if it is reasonable and reasonably explained. Respectfully, it is neither. If the charge in question is intended to provide a financial incentive for parties like TCW to return shipping equipment promptly, the Commission never explains, in the order under review or its brief, how, under the facts in this case, the prospect of TCW having to pay $510 in charges for returning Evergreen's equipment late does not serve a far greater financial incentive than if there was no The Commission's no charges on closed days conclusion was based on its 2020 interpretive rule, which was intended to provide the industry guidance on how the Commission was going to assess the reasonableness of detention charges in future Shipping Act cases. The interpretive rule did four things. First, it clarified that it was only guidance, no one-size-fits-all set of regulations, and no bright-line rules. Second, it listed a number of non-exhaustive factors that the Commission said it was going to consider when it applied its reasonable test to detention charges in the future. And third, it created the so-called incentive principle. Since the detention charges aren't supposed to incentivize the prompt return of equipment, the Commission says as part of its analysis it would consider whether or not there was such incentive in any particular case. And lastly, and importantly, in addition to the incentive principle, the FMC said it would any other facts and extenuating circumstances that parties raise on a case-by-case basis. In the order under review, the Commission ignored the facts. It abandoned its interpretive rule and its prior precedent. It threw out that non-exclusive factor test, multi-factor test, and it doubled down on a single factor, the incentive principle, and it did that. It created a bright-line rule, no charges on closed days. And number two, even doubling down the incentive principle, it compounded that mistake because it got that principle wrong too. Here, when TCW knew that the terminal was going to be closed and the terminal was open for days after the equipment was due, there most emphatically was an incentive for TCW to return the equipment. They just didn't exercise that incentive. The Commission itself concedes that in its brief. Can I just ask you a very basic question, which is how you understand what the Commission's rule is? The small claims officer issued a clarification, I think, that purported to say the rule was just essentially a final weekend rule, a constructive delivery rule. If you would have delivered the container on a Saturday, then you can't charge for the rest of the weekend. But on appeal and other parts of the order seem to set out a much broader rule you're suggesting, which is just no charges ever on a weekend. Which of those do you think is actually the rule that's been announced? Judge Garcia, it's a bright-line rule that there are no charges on any closed days of the weekend. And the way that we know that is the Commission's basis for that decision is when it said there can never be a financial incentive for a party to if the terminal is closed on that particular day. And we also know that because if you look back at both the small claims officer's decision and the FMC's decision on appeal, it doubled down on that one factor of incentive. And it said there could not be any incentive here because it was physically impossible to return the container on that day. So Evergreen's point of view is there's no other way to read that. In all future cases, there are no charges on closed days. The Commission has that that's unreasonable. And Judge Garcia, I'd mention one more point, which was we also know it's a hard and fast rule. And this was in the amici's brief. Because since this rule, the Commission has gone to all regulated parties, including Evergreen and Ocean Carriers and said, please tell us that you're complying with this rule. So it's a rule. It's a hard and fast, bright-line rule. And it's exactly the opposite that the Commission said they would do in the agency's answer. You looks in part to the order in this case where it says further worded that absent extenuating circumstances, Evergreen shall cease and desist from levering charges on those days. So they're saying, right, well, we're still waiting for someone to show us exigent circumstances. Why isn't that less than a bright-line rule? Because we did show extenuating circumstances, Your Honor, in this case. In fact, as Evergreen pointed out in its brief, if the extenuating circumstances that were present in this case were not enough for the Commission to find the charging question to be reasonable, it will never be. TCW had three weeks to use Evergreen's container at no cost. The container was due to be returned a full three days when the port was open and operating for business. TCW knew months in advance when the port was going to be closed. There's no question whatsoever. Why was there a notice sent on Friday, the 22nd, that the port would be closed on Monday, the 25th for memorial? Was that known prior to that notice being sent? It was, Your Honor. So there's two notices in question that you're talking about in the record. The first we're talking about the notice of the closures on the Saturday and Sunday. Those go all the way back to March of 2020. And there's no question that there were months of notice there. Second, on the customary advisory that you're referring to, that went out on Saturday to remind truckers and other parties that the terminal was going to be closed on Memorial Day, that was just a reminder notice. The full port's holiday closure schedule is available on the port's website. It was available on the port's website now. And actually, if you look at it now, you can see that the Memorial Day this year, the port was open. Now, at one point, the answer to concern about not delivering the three days before, at the end of the free time, was that the Yamaha plant was closed, not the port, but the Yamaha plant. What's your response to that? So this is an important aspect of why the commission didn't do the necessary job that's required under the APA, because the commission took at face value that the port was closed and rather, Yamaha's plant was closed for COVID reasons. There was simply nothing that TCW could have done in that case. And your honor, there's no evidentiary record on it. And Evergreen argued both before the small claims officer and both before the commission on appeal. He said, TCW hasn't shown you any actual evidence as to what best efforts it took. So as I read the pleadings, in your response to the complaint, you said, indeed, you denied that sentence. There's a long paragraph with several sentences, and you denied all but one or two of them, whatever it was. So you denied the allegation that the Yamaha plant was closed. There was no response to that. The SCO took it as a fact. You objected. Yeah, pardon me. So you had objected, and it was taken as a fact nonetheless. Did you renew that? I couldn't find this. Did you renew that objection? Yeah, but I think it's called the supplemental brief, the one that goes to the commission itself. We did, your honor. Did you give me a page? The page sites are JA-170, where this is first before the small claims officer, where Evergreen said, there's an absence of evidence on the record to prove the allegation. And then secondly, on JA-242 and 243, this is before the commission, Evergreen said, it failed to do so for reasons having nothing to do with Evergreen. To the contrary, the claimant admits that the reason for failure was the return of the equipment that was stuck at your facility. Given that claimant was the preferred trucker and claimant obtained Evergreen business at its behest, one would think claimant would have asserted some due diligence to try to get the BCO to release the equipment sooner. No such effort was shown. That was regards to the claim of best efforts to deal with the BCO. But what about specifically denying that the plant, pardon me, that the SCO had accepted this assertion without evidence? Did you say that? We did in our briefing before the commission as well. And we raised that because there's sort of one in the same, which is to say the argument that was being made by TCW was the plant was closed. And the argument that Evergreen was making was, if you actually look at the record, the plant was actually releasing empty containers during this, the week prior. So the plant was open. The question then becomes, what did TCW do to retrieve the container in time so that it could return it to the port of Savannah in time? Well, then why is it that Yamaha gave you notice, I think on the Saturday in question, that's right, that the container was available for pickup just because the plant was open doesn't mean that the container was ready to be picked up. So that's right, Your Honor. So the evidence, is there a suggestion even that you could have gotten the container from Yamaha before the expiration of the free time? That's our contention. Our contention is it's certainly possible. And it was up to TCW in order to demonstrate that it at least made those efforts. And the notice that... They made no effort whatsoever, but they got notification only on the Saturday in question. The notification, Your Honor, that they got, I understand the point of the record that you're talking about, actually was on Thursday. So the notification, the email that you're referring to is dated Saturday, but they received the notification on Thursday. And so in other words, they received it on Thursday and they could have picked up the container or called their customer Yamaha and said, our container is due. It's already due, but we need to return it by Friday to stop incurring charges. And what was the date of the Thursday you said? No, it's the 21st. That's correct. I can pick it up. Yes, on the 23rd. Well, they gave notice on the 21st saying you can pick it up on the 23rd, which certainly implies that you could not pick it up now on the 21st, right? Your Honor, that's certainly how the FMC said it. But the critical question is, well, what did TCW do to... It said we took best efforts. It sounds like what they did was just got that email on Thursday and did nothing at all. And the way we know that they did nothing at all is because they didn't give you a single example of anything that they did. And you're right to point on this. This is a very important point because the commission's record is based upon two things, that apparently TCW did everything it could to get the container on time and that they couldn't return it afterwards. Well, it's important that TCW has the burden of proof under the Shipping Act to show that the charge was unreasonable. And to do that, it's their job to tell the commission what best efforts they took. In the commission's brief, they turned to Evergreen and they said, Evergreen hasn't given any example to refute this factual allegation. Well, the only ones who are in the position of knowing this knowledge are TCW and Yamaha. They're the only ones who can tell the commission what it is that they did. And they took a pass on that. And the reason they took a pass on that is they didn't do anything. They just... Oh, we don't know. We don't know. And if nothing else, if nothing else, this court needs to remand the case back to the commission to do that factual evidentiary finding. It's critical as part of this case, because if indeed TCW did something, that might bear on the overall reasonableness analysis. But the commission couldn't find reasonableness here because they just simply didn't ask the questions and didn't do the appropriate amount of fact-finding. And you say that's because the burden is on the challenger under the Shipping Act. That's correct, Your Honor. It seemed to me it might also be true because the assertion is in the nature of a defense as to which they have the facts, not you. That's correct, Your Honor. All right. I'll give a couple of minutes. Thank you, Your Honor. Mr. Huey. Good morning. May it please the court. I'm Chris Huey for the Federal Maritime Commission. I'd like to jump right into what you were asking about, Judge Ginsburg, starting by pointing out that this is a quasi-judicial role the FMC has in this case. It's an adversarial proceeding. And I don't think that Evergreen has alleged or shown that it didn't have enough process, enough discovery opportunities to engage in the kind of here and about the activity that went on before the container was ready. Counselor, why is any of this discussion of TCW's efforts to get the container from Yamaha relevant when the rule the Commission announced and the cease and desist order does not turn in any way on the fact or the asserted finding that TCW couldn't have done anything to get the container earlier? It's a cease and desist order to stop charging fees on all weekends, right? It is absent extenuating circumstances. And so there's always that out. And I think that what that does is preserve that each one of these cases is decided on its facts and that a carrier like Evergreen would always retain the opportunity to put forward an argument, a defense, whatever it might want to say, even if there were an effort to enforce the cease and that there's sort of a perpetual opportunity to make it about the facts of that case. And so I think that your earlier question really got to the heart of how the court wants to decide to look at this, because you're absolutely right that the small claims officer did issue something. I don't think it would be categorized as an official document. It was more in the nature of like a helpful email before the commission announced its decision to review the case, saying that sort of what you were explaining this akin to constructive delivery, that because TCW was ready on Saturday to turn in the container, that's why the daily charges on Saturday, Sunday, Monday were not reasonable. My concern is I think both of those arguments could go to showing that the fees here were unreasonable, either that the commission wants to adopt a constructive delivery principle and explain that or that it turned on the Yamaha plant being closed. My concern is that none of that is in the commission's order. Instead, it's an explanation based on the incentive principle that counsel on the other side focused on. And so why shouldn't we remand to give the type of explanation that you're now offering? Well, a couple of reasons. I don't think there's going to be any useful additional fact-finding after what was a very elaborate adversarial proceeding creating a pretty big record for a $110 case. Secondly, the incentive principle itself is what the commission relied on to decide this. I want to get to that for a moment here and talk about how the commission looked at that and how that differs from the way that Evergreen would prefer to look at it. The commission viewed the daily penalty charges for not turning in the equipment on time in that way, literally as being daily charges. And so it went granular and it looked at, okay, on any particular day, is it possible to do the purportedly incentivized behavior? Well, it was on Friday, but it wasn't on Saturday. And so the Friday charge is reasonable and the Saturday charge is unreasonable. The kind of expanded incentive that Evergreen argues for, where if you don't turn it in on Friday, you have to pay three days worth of daily charges instead of one day's worth of daily charges. First of all, on the record of this case, on the facts that we have, it didn't work. DCWs still turned the equipment in late, despite having what Evergreen argues is a very strong incentive hanging over their head. But more importantly, I think, is to look at it that way, moves right past the fact that they are literally daily per diem charges. And are they reasonable on, they might be reasonable on one day and unreasonable on another day. What the agency is looking at is what behavior is supposed to be incentivized. And as we put it in brief, you literally can't incentivize the impossible. And so why would a trucker be penalized for something that it couldn't do on that day? Now in the record, and the commission fully supports this, DCW was on the hook for about $1,000 in late fees. And that was not questioned by the agency at all. And that's about two thirds of the late fees that were actually in play in this case. So the commission ordered a refund of about a third of them. And that's because it went grand in there and it looked at on a day-to-day basis, is a per diem charge reasonable or unreasonable? And it found these to be unreasonable. Counsel, at page eight in your brief, at the top, carrying over from the previous page, eight to nine, pardon me. Under this deferential standard, you say, the court will uphold the agency so long as the action is reasonable and reasonably explained. Curiously though, the next sentence after the next header is to find a violation. The statute requires that the practice be unjust or unreasonable. And that since it's reasonable, we should be the petition. The point about reasonably explained drops out in the second telling. But the argument in the petitioner's brief is extensively on whether you responded and explained why you didn't accept certain factors that they raised as, I guess, extenuating circumstances, if you will. So one of them, let's start with the one at 33 in the blue brief, is that the commission did not provide a reasoned analysis of whether the conduct in question was reasonable in light of the facts just as you cited. And that was that first one here. That there had been this allotment of 21 days, and that the contract was provided by a contract, a negotiated but longstanding contract on the intermodal exchange addendum, that the court's operating days were previously announced. There's several different things like that. And your responses to them seem to me quite limited. Let's put it that way. With respect to, give me a moment, in one instance, your answer is, well, sure we did look at, I think it was the SCO opinion, but may have been the final opinion. And all that says there is respondent's argument. It's just a description of their argument. That is not an analysis of why it was unreasonable, or why you rejected it. It's just a description. Correct. So I think part of the issue there is that Evergreen is trying to frame certain issues as controversies that are not. So for example, the one that I think Evergreen highlighted most extensively is the fact that TCW knew about the closures in advance. But that's simply part of the record. TCW never said it didn't know about the closures in advance. It actually attached the closure notifications to its complaint. And that wasn't the notion that they were surprised by the closure, and therefore shouldn't be on the hook for per diem, was not part of their argument at all. That is a plausible argument under this regulation, but it's not the one that TCW made. So in that case, it seems like Evergreen is rebutting an argument that wasn't made by the complainant. There are a few of these. One of them, as I say, was just all you did was point to the great respondents argue. And another one, it was again, pointing to something that was, could hardly pass as analysis or as a reasonable basis for rejecting their point. And those, what shall I say, lacunae in the final decision leave me wondering what you would say if you actually took on the analysis. In one case, one instance, the commission said something that you point to later that I just simply cannot understand. This is at 304 in the JAG, page 10 of the opinion. The commission also rejects the argument raised in amicus filing that not charging during the three days closure would have disincentivized the return of the container before the closure. That I understand, but here's what the commission says. These arguments were previously raised and similarly dismissed during the rulemaking process. First, the disincentivizing argument neglects the commercial incentives to returning empty containers. And I could easily argue the contrary position, namely that the ability to collect per diem, even if it's impossible for a truck to return equipment, might disincentivize ocean carriers and marine terminal operators from acting efficiently. What does that last part mean? What is the disincentive to which the commission is referring? Effectively, that if there's no incentive on the other side of this equation to potentially change practices to make cargo fluidity occur, that it puts too much of the emphasis on the cargo interest side. So, for example, if per diem is being limited by a port closure, marine terminals and or carriers might determine to open on Saturdays. But under a system in which they can charge these charges on closure days, they don't have an incentive to consider something like that, to consider a different and potentially more efficient approach to their hours, to their equipment return policies. In other words, that it puts all of the pressure of innovation and all of the risk on the shipper side, on the cargo interest side, on the trucker side in this case. Why does that outweigh the positive incentive to early return on the trucker if Evergreen's position was adopted? It's certainly, you've described that not allowing weekend charges or allowing weekend charges might incentivize some form of bad behavior by the terminals. Where's the explanation of why that outweighs the positive incentive to return containers early? I think that this is balanced with an overall focus on reasonableness. And so, again, it's getting granular. And is the charge on a particular day reasonable or not? These, I mean, these are underlying kind of big picture policy arguments about this. But I don't think that they get to the actual like rubber meets the road of the commission's decision here, which is looking at specific days and specifically whether the incentivized behavior can happen. And so, if that discussion is confusing, and I certainly see that it is a run on sentence and we apologize for that. But if that's confusing, I think it still doesn't get to what the commission was fundamentally concluding here about per diem literally meaning per diem. And you look at the charges on a daily basis to evaluate and judge their reason. When Evergreen makes the point in their brief at 44, and we heard it earlier today, I think you began to address the critical flaw in both the SCO and the commission's reasoning as they both look at each day in isolation and improperly conflate TCW's ability to return the equipment on that day with the broader incentive to return the equipment promptly. It's again at 44. And the commission's answer to that apparently was in the commission's opinion, not the brief. In this case, there was nothing claimant could have done to return the container between May 23 to 25 because the port was not receiving containers. The SCO correctly found that the per diem charges were unreasonable because they could not have been incentivized cargo movement given that the port was closed on those days, making it impossible for the claimant to return the equipment. The client, the counter was of course, well, if there's a penalty that's going to accrue on Saturday, the incentive is to return the equipment before Saturday. And that doesn't have to be on Saturday, right? It could have been, indeed, free time ended on the 21st, I think it was. So there was an incentive to return it by then and the incentive grows each day. And the fact that it couldn't grow, or pardon me, that they couldn't deliver it on those three days simply means that the incentive to deliver it on time is even greater. Your Honor, the commission's position is that it has to be a reasonable incentive, in other words, closely tailored to the purpose. And so the agency's conclusion here is that a sort of supersized incentive of three days worth of charges for being one business day laid isn't closely tailored enough to the goal. And it's not reasonable because they couldn't do the thing that's being incentivized. The Friday charge stands, the Tuesday charge stands, and all the preceding days before that all stand. But in the agency's view, it really turns on, is the incentivized behavior possible? So imagine you just said the Tuesday charge is fair. Imagine they return the container on a Wednesday and a Thursday. What charging fees on the weekend is doing is incentivizing the trucker to continue taking steps to get it to the terminal on Tuesday or Wednesday, right? It's not that just because the port is closed doesn't mean that you can't incentivize on the carrier, the trucker, to still be working over the weekend, right? I'm just not sure how that logic holds up. So again, the commission has to make sure that these incentives are reasonable incentives and closely tailored. So that was, it's the agency's expert opinion on this, that it's not reasonable to charge on days when you can't do the incentivized behavior. Does a supersized incentive of many days worth for being one business day late further incentivize? Well, as I mentioned earlier, in this case, it sure didn't because they were still late. Abstractly, does it do that? Maybe. Is it reasonable though? And is it rational? I mean, the fact of it being a three-day weekend by the time TCW got notification of the container being ready is a coincidence. Is that a rational system to base charges that are supposed to be closely tailored and that the commission is looking at on a granular day-to-day basis to make them subject to such happenstance? So we would say no. All right. Thank you. Thank you. Mr. McGovern, why don't you take two more? Judge Anderson, I'm sorry, I couldn't hear you. What? I couldn't hear you asking the question. Oh, okay. Mr. McGovern, would you come back up to the podium, please? Judge Ginsburg has a question. Mr. Huey, I keep getting your name next to me. Sorry, I was thinking he's already there. I'm sorry, I was distracted. I'm not sure I caught your answer to, I think it was about discovery as to when the complaint made about the commission accepting the SCO accepting the pleading that the Yamaha plant was closed. And what did you have to say about that, that the Evergreen didn't avail itself of discovery on the question? So, yeah, my point, Your Honor, is that this is an adversarial proceeding. The commission's in a quasi-judicial role here. And Evergreen hasn't alleged that it didn't have enough process to try to find these facts that it supposes exist. There's no evidence for in the record. Well, I don't think they said they didn't have enough process. I may be mistaken, but they were complaining that the assertion was accepted, although there was no evidence, just the assertion. The evidence, I think, was what you referred to earlier about the attachments to TCW's complaint showing the emails from Yamaha showing that the container wasn't ready until that Saturday. That's unrefuted. Evergreen didn't. Actually, the notice wasn't that it was unavailable until Saturday. It was that it would be available for pickup on Saturday. But there had been pickups at the plant on other days that week and the previous week. So I don't think we know when it was first available. The other thing in record on that is TCW, which, because this was a small claims proceeding, it wasn't represented by a lawyer. It was a vice president from the company itself filing the documents. And the complaint where he says we couldn't turn in the equipment until Saturday was sworn. And so that's in the record as well. And I don't see anything where Evergreen has not had ample opportunity through multiple rounds of briefing to bring out additional facts. The evidence that existed in the record on that point, though, was unrefuted. That's why the small claims officer made that finding. So the small claims officer was both making a fine. Well, actually, he made a fine. He just accepted it, repeated it. So it were established and then did not. And then drew an inference from that, correct? That it could not have been picked up earlier. I think that's right. Yes. Why would the Yamaha give notice that it could be picked up on Saturday if the plant was closed? As the commission's position has been that the Yamaha's plant was closed the whole time. I don't know what Yamaha's COVID restrictions were, how they implemented that. In the emails that you referred to earlier, there's a long list of available containers. This was only one of them. It looks like dozens maybe of containers. On various dates. Yes. This particular container by ID number shows up only on the Saturday. Yes. No, that's absolutely right. And there's others on the list. And you have to kind of dig around and find the particular container on that list. And again, I don't see that Evergreen didn't have ample opportunity in this adversarial proceeding. Well, why can't they say this, you know, this is the challenger's burden. And we have the emails from Yamaha and TCW swearing that this was the only opportunity they had, first opportunity they had to pick up the container. Well, Yamaha says they made, pardon me, TCW maintains that they made best efforts, right, to deal with the BCO to arrange delivery. But what evidence is there that they made any effort? Oh, again, we have their sworn testimony and we have those emails and we have nothing from Evergreen. Did they say in that sworn testimony anything that they did or does it say we made best of? More of the latter. Yeah. Okay. Thank you. Okay. Thank you. Mr. McGovern. Thank you, your honors. The agency just told you what its analysis was. It told you that it applied to a single factor and asked in its entire reasonableness analysis, one question, was the terminal open on that day? That's it. And then the agency just told you if there's no ability to return on that one day, then there's no incentive to return at all. And we submit that's illogical and unreasonable. The agency suggests it's the expert agency, but the agency is not an expert on the general concept of incentive. And by analogy, I offer this. Let's say that I have a library book that is due this past Wednesday. And I know that the if I don't return the book before that closure. Now, I am incentivized to get to the library today as quickly as I can so that I can avoid those charges because I know it's going to be closed and I know the charges will incur. But if you tell me that there will be no charges over the weekend, then I have no reason, no incentive to go to the library today and return my book. I'm just going to wait until Monday. So that's the commission's incentive analysis. And that's the effect of its order. And that's why it's illogical and unreasonable. As it relates to TCW's knowledge, we are most certainly rebutting the FMC's analysis on that. They are incorrect there. The FMC says on this critical issue that TCW had prior knowledge of the board's closure, the FMC told us in the order, we already considered that issue, pointing generically to the interpretive rule, where it pointed to situations involving uncommunicated and untimely communicated terminal closures where there was no notice at all. That's completely the opposite of the situation here, where TCW had months of notice. So the FMC can't say that they prior, that they considered the most critical fact in this. They did exactly what this court has told agencies it cannot do. It recited the facts, it jumped to the conclusion, and it didn't, it ignored the rest of the facts, and it didn't give you the reason explanation as to how it got there. Can I ask you just briefly about that? So what you mainly just talked about is the substantive reasonableness of the commission's rule. And you also raised, obviously, a reason decision-making argument. And one of the focuses of that is, why is advance notice, you know, an expected closure not different from an unexpected closure? And, you know, we will uphold decisions that are, you know, less than clear. And I take it to be FMC's position, essentially, that our fundamental rule is crystal clear, as you put it. If the port is closed and can't be returned, there's no incentive. And so it's just sort of obviously irrelevant whether the closure is expected or unexpected. So only in terms of a reasoned decision-making argument, what more do you think should have been in the commission's decision to explain why advance notice is irrelevant? Your Honor, it makes all the difference in the world. Because if a party has advance notice, they have the opportunity to plan ahead and change their behavior in order to return the equipment on time. So Evergreen says two things. Number one, the commission is telling us that Evergreen didn't act on its evidentiary record. We asked the question, we raised the question multiple times, saying you haven't asked TCW what it's done. So it doesn't have the record right now to even find that the charges here were unreasonable. What we would require the FMC to do is ask those questions and then do a full analysis of all of the facts, do a full analysis of the fact that TCW knew that the port was open when free time expired, do a full analysis of the fact that TCW is a commercially sophisticated entity, contractually agreed up front that it was going to pay Evergreen detention charges, including on weekend and holidays, and including the fact that Evergreen played no fault at all in the delay. We would ask the commission to factor all of these and then provide this court a reasoned explanation why these charges are nonetheless unreasonable. I'm sorry I didn't raise it with the commission, but as you remind me now, factors you just recounted included and some of them traced back to the contractual point. These were sophisticated parties who had entered into a negotiated contract, to which, as I recall, the commission's response was that they have jurisdiction under the Shipping Act to override a contractual provision, and that's certainly true. Full stop. Your Honor, if you look at... I didn't see any response as to sophisticated parties' presumption that they would know what they're doing. Your Honor, you didn't see a response because they didn't give you a response, either in the order or in their brief. If you look at the interpretive rule, they said one of the factors that would be considered in this multi-factor test is the contractual situation of the parties and what they were concerned about. Again, it's important to look at the rule. The FMC didn't do this. What they said was, we're concerned about bargaining power here. We're concerned about one party taking advantage over another. Again, under these facts, in this case, we don't have that. We have two commercially sophisticated entities that went in up front and made a contractual agreement that detention charges would apply every day the equipment would return late, including weekends and holidays. TCW went into this transaction knowing full well that weekend and holiday charges would apply, and it had knowledge of the terminal, when it was going to be open, and it was going to be closed. But I don't doubt that the Commission could overrule that, could reject that. Yes, it says it has jurisdiction to do so. All Evergreen submits is narrow words that they didn't explain why they would override the contract. That's right, Your Honor. Evergreen's position is this is one of many reasonableness factors that the Commission failed to consider. So if the case is remanded back to the agency, then the agency can consider it just as you suggested, Your Honor. Thank you. Thank you very much, Your Honor.
judges: Henderson, Garcia, Ginsburg